THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

FILED
CLERK US DISTRICT COURT

JUN 28 2000

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ENTREPRENEUR MEDIA, INC., | ) | CV 98-3607 FMC (BQRx) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING IN PART AND** |
| | ) | **DENYING IN PART PLAINTIFF'S** |
| vs. | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT; DENYING** |
| | ) | **DEFENDANT'S MOTION** |
| SCOTT SMITH, dba | ) | **FOR SUMMARY JUDGMENT** |
| ENTREPRENEURPR | ) | |
| | ) | |
| Defendants. | ) | |

CLERK U.S. DISTRICT COURT

JUN 29 2000

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

**I. Introduction**

Plaintiff filed a complaint for trademark infringement under 15 U.S.C. § 1125 of the Lanham Act and unfair competition under California Business and Professions Code § 17200, alleging that defendant's marks, including ENTREPRENEURPR and ENTREPRENEUR ILLUSTRATED are confusingly similar to plaintiff's marks. Plaintiff also alleges that defendant's unauthorized use of its mark, ENTREPRENEUR'S SMALL BUSINESS SQUARE, constitutes counterfeiting under 15 U.S.C. § 1114.

✓ Docketed
✓ Copies / NTC Sent
__ JS - 5 / JS - 6
__ JS - 2 / JS - 3
__ CLSD

JUN 29 2000

117.

Both parties have filed motions for summary judgment contending that no genuine issues of material fact remain and each is entitled to judgment as a matter of law. Plaintiff also seeks damages and attorney fees.

## II. Standard

Summary judgment or summary adjudication is only proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. 56(c); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e). Summary judgment is appropriate where the nonmoving party fails to make a sufficient showing on an essential element of the case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

/ / /

2

## III. Uncontroverted Facts

1. Since 1978, plaintiff has continuously used the mark ENTREPRENEUR in connection with its magazine. Lesonsky Dec. ¶ 3.

2. Plaintiff registered the mark ENTREPRENEUR for printed publications in 1987. Finkelstein Dec. ¶ 4, Ex. E.

3. Plaintiff's mark appears in red letters on the cover of its publication ENTREPRENEUR. Kravitz Dec., Ex. 2.

4. Plaintiff's website is found at ENTREPRENEUR.COM and ENTREPRENEURMAG.COM. Fuller Dec. ¶ 6, Ex. M.

5. Plaintiff uses and has registered several other variations of the word "entrepreneur" to identify publications or services including: ENTREPRENEUR EXPO, ENTREPRENEUR INTERNATIONAL, ENTREPRENEURIAL WOMAN, ENTREPRENEURMAG.COM, ENTREPRENEUR'S HOME OFFICE, ENTREPRENEUR'S INSIDER NEWSLETTER, ENTREPRENEUR MAGAZINE'S GUIDE TO FRANCHISE AND BUSINESS OPPORTUNITIES, ENTREPRENEUR MAGAZINE'S ONLINE. Finkelstein Dec., Ex. E.

6. Plaintiff's goods and services include: "software, business guides, video and audio tapes, . . . web sites and online services, . . . creat[ing] and participat[ing] in trade shows, seminars, educational programs, and business services, all in connection with small businesses." Lesonsky Dec. ¶ 3.

7. In December 1996, plaintiff listed defendant's company ICON publications on its "Small Business Links" page and gave defendant permission to use plaintiff's logo, Small

3

Business Square, on his website. Fuller Dec. ¶ 3.

8. In 1997, defendant changed the name of his business from ICON publications to ENTREPRENEURPR and the name of his publication from Yearbook of Small Business Icons to ENTREPRENEUR ILLUSTRATED. Smith Dep. 124:20-125:6; Finkelstein Dec., Ex. F.

9. Defendant's website is found at ENTREPRENEURPR.COM. Finkelsteing Dec., Ex. F.

10. Defendant's mark appears on the cover of his publication in yellow. Kravitz Dec., Ex. 3.

11. Defendant's goods and services include: preparing and publishing press releases that profile small businesses and providing information on the Internet. Smith Dec. ¶ 2.

12. Four of defendant's clients or potential clients state that they believed that defendant was "affiliated" with plaintiff; "part of Entrepreneur magazine" or otherwise associated with plaintiff. Demarest Dec. ¶ 8; Cesare-Taie Dec. ¶ 8; Chippi Dec. ¶ 5; Breshahan Dep. 20:16-21:5.

13. Defendant's former employees state that potential clients asked them if defendant was affiliated with plaintiff. Kufarsimes Dep. 38:22-39:23; Gurely Dep. 41:7-24.

## IV. Trademark Infringement

"The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992).

The Court's concern for confusion among "consumers" as opposed to the general public is grounded in the very purpose of trademark law.

> [T]rademark law, by preventing others from copying a source-identifying mark, "reduce[s] the customer's costs of shopping and making purchasing decisions," for it quickly and easily assures a potential customer that this item — the item with this mark — is made by the same producer as other similarly marked items that he or she liked (or disliked) in the past. At the same time, the law helps assure a producer that it (and not an imitating competitor) will reap the financial, reputation-related rewards associated with a desirable product.

*Qualitex Co. v. Jacobson Products Co. Inc.*, 514 U.S. 159, 163-64, 115 S. Ct. 1300, 131 L. Ed. 2d 248 (1995) (citation omitted).

Plaintiff's consumers in this case are small business owners who read plaintiff's publications and utilize plaintiff's resources via the Internet and Entrepreneur Expo. Defendant's consumers are small business owners who purchase his public relations services and those who receive his publication. Accordingly, the likelihood of confusion inquiry in this case is limited to whether a reasonably prudent small business owner or other individual seeking either publications or services targeted to small businesses might confuse defendant's services with plaintiff's. *See Dreamwerks Prod. Group, Inc., v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998); *see also Murray v. Cable Nat'l. Broadcasting Co.*, 86 F.3d 858, 861 (9th Cir. 1996) ("A likelihood of confusion exists when a consumer viewing a service mark is likely to purchase the services under a mistaken belief that the services are, or [are] associated with, the services of another provider.").

The Court looks to the eight factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), to determine the likelihood of consumer confusion: (1) strength of

5

the mark; (2) proximity or relatedness of the goods; (3) similarity of the sight, sound and meaning of the marks; (4) evidence of actual confusion; (5) degree to which the marketing channels converge; (6) types of goods and degree of care consumers are likely to exercise when purchasing; (7) intent of defendants in selecting the infringing mark; and (8) likelihood that the parties will expand their product lines. *Id.* at 348-50; *see also Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993); *Gallo*, 967 F.2d at 1290.

This list of factors is neither exhaustive nor exclusive and is intended to guide the Court in assessing the basic question of likelihood of consumer confusion. *See Gallo*, 967 F.2d at 1290. Because these factors are not to be applied in a mechanical manner, the Court considers the *Sleekcraft* factors in order of their importance to the pending case. *See Brookfield Communications Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1054 n.16 (9th Cir. 1999); *Dreamwerks*, 142 F.3d at 1129.

Similarity of the Marks

Similarity of the marks is "a critical question in the likelihood of confusion analysis." *GoTo.Com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). The greater the similarity between the two marks, the greater the likelihood of confusion. *See id.* at 1206. Similarity is determined by the appearance, sound and meaning of the marks when considered in their entirety and as they appear in the marketplace. *See GoTo.Com*, 202 F.3d at 1206; *Dreamwerks*, 142 F.3d at 1131; *Sleekcraft*, 599 F.2d at 351. The similarities of the marks are weighed more heavily than differences. *See GoTo.Com*, 202 F.3d at 1206; *Brookfield*, 174 F.3d at 1054.

6

Plaintiff has used the mark ENTREPRENEUR since 1978. Uncontroverted Fact ("UF") 1. It registered the mark for publications and computer services in 1987. UF 2. Plaintiff's mark appears in red letters on the cover of its publication ENTREPRENEUR. UF 3. Plaintiff also uses and has registered several other variations of the word to identify other publications or services including: ENTREPRENEUR EXPO, ENTREPRENEUR INTERNATIONAL, ENTREPRENEURIAL WOMAN, ENTREPRENEURMAG.COM, ENTREPRENEUR'S HOME OFFICE, ENTREPRENEUR'S INSIDER NEWSLETTER, ENTREPRENEUR MAGAZINE'S GUIDE TO FRANCHISE AND BUSINESS OPPORTUNITIES, ENTREPRENEUR MAGAZINE'S ONLINE. UF 5.

In 1997, defendant changed the name of his business from ICON publications to ENTREPRENEURPR and the name of his publication from Yearbook of Small Business Icons to ENTREPRENEUR ILLUSTRATED. UF 8. Defendant also uses ENTREPRENEURPR.COM as his website's address. UF. 9. On the cover of its publication, defendant's mark, ENTREPRENEUR ILLUSTRATED, appears in yellow. UF 10.

The sound of the marks is overwhelmingly similar, although ENTREPRENEURPR contains additional letters that would be pronounced "P""R." ENTREPRENEUR ILLUSTRATED also sounds similar to plaintiff's mark.

The marks looks similar. Although PR is found at the end of defendant's mark, it does not change the fact that plaintiff's entire mark is contained within it. The fact that defendant's publication title, ENTREPRENEUR ILLUSTRATED, contains an additional

7

word does not diminish the fact that entrepreneur is contained in the title making the appearance of the marks similar. Moreover, the word entrepreneur is clearly the dominant of the two words on the cover of the publication. Defendant places a great deal of emphasis on the fact that plaintiff's mark appears in red on its publications and defendant's is in yellow. However, the color difference does not diminish the fact that the word ENTREPRENEUR is the most prominent visual feature of both publications' covers.

Finally, although defendant's mark contains the additional meaning of PR or public relations, the meaning of ENTREPRENEUR — small, independent business owners — is suggested by both.

Because plaintiff's entire registered mark ENTREPRENEUR makes up the primary portion of each defendant's marks, the marks are similar based on sight sound and meaning. Because the Court weighs similarities of the marks more heavily than differences, *Brookfield*, 174 F.3d at 1054, this factor weighs in favor of finding a likelihood of confusion.

## Relatedness of the Goods

"Related goods are more likely than non-related goods to confuse the public as to the producers of goods." *Official Airline Guides, Inc.*, 6 F.3d at 1392. "[P]roducts which would be reasonably thought by the buying public to come from the same source if sold under the same mark" are considered related. *Sleekcraft*, 599 F.2d at 348 n.10. Moreover, when goods are complementary, sold to the same class of purchasers, or similar in use and function, less similarity between the marks is needed when analyzing this factor. *See Sleekcraft*, 599 F.2d at 350.

8

Plaintiff's goods and services include: "software, business guides, video and audio tapes, . . . web sites and online services, . . . creat[ing] and participat[ing] in trade shows, seminars, educational programs, and business services, all in connection with small businesses." UF 6.

Defendant's goods and services include: preparing and publishing press releases that profile small businesses and providing information on the Internet. UF 11.

In sum, both parties print publications that feature small businesses. They each provide information about their own services and publications on the Internet. These goods and services are sufficiently similar to support a finding that the goods and services are related. *See, e.g., Brookfield*, 174 F.3d at 1057 (where both companies offered products related to "the entertainment industry generally," the products were related). This factor weighs in favor finding a likelihood of confusion.

<u>Actual Confusion</u>

Evidence of actual confusion is "persuasive proof that future confusion is likely." *Kendall-Jackson Winery, Ltd. v. E.&J. Gallo Winery*, 150 F. 3d 1042, 1048 (9th Cir. 1998) (citation omitted). Plaintiff offers the following evidence to support a finding of actual confusion: declarations from four of defendant's clients or potential clients stating that they believed that defendant was "affiliated" with plaintiff or was "part of Entrepreneur magazine" or otherwise associated with plaintiff. UF 12. Plaintiff also points to the statements of defendant's former employees that potential clients asked them if defendant was affiliated with plaintiff. UF 13.

9

Defendant argues that his clients' statements are open to impeachment because (1) they were not subject to cross examination, (2) they contain hearsay and (3) each client had payment disputes with defendant that call into question his or her credibility. Defendant points to no evidence to support its allegations that the witnesses are not credible and provides no basis to exclude the evidence. Moreover, sworn declarations are clearly appropriate evidence on a motion for summary judgment. *See* Fed. R. Civ. Proc. 56(e). Defendant also contends that the statements of his employees should be disregarded because they contain hearsay. Plaintiff argues that the statements are not hearsay because they are not offered for their truth (that the entities are associated), but only to demonstrate the state of mind of the caller (confusion as to whether the parties were associated). The Court concludes that these statements are not hearsay.

Although not overwhelming, evidence that four customers stated that they believed defendant's services were affiliated with plaintiff and questions from potential clients about whether defendant was affiliated with plaintiff is sufficient for the Court to find actual confusion exists. This factor weighs in favor of finding a likelihood of confusion.

Intent in Adopting Mark

"When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public." *See Official Airline Guides*, 6 F.3d at 1394; *see also Sleekcraft*, 599 F.2d at 354. Evidence before the Court demonstrates that defendant was well aware of plaintiff's mark when it decided to change its name and adopt new marks. Defendant's business had been featured in plaintiff's publication; a fact defendant publicized

10

to his clients. The marks are clearly similar, supporting the Court's presumption that defendant intended to confuse the public by adopting the mark.

Defendant's argument that he believed that he could properly use the mark because he did not compete with plaintiff is unavailing. The inquiry is whether he knew the marks were similar. Moreover, likelihood of confusion does not require competition between the parties' goods and services. As noted above, goods that are merely complementary will support a finding of a likelihood of confusion. *See Sleekcraft*, 599 F.2d at 350.

Plaintiff also points to defendant's statement to an employee that "it's great" that potential customers think defendant and plaintiff are affiliated. *See* Gurley Dep. 42:24-43:2. This statement was made after the marks were adopted. Only defendant's intent at the time he adopted the mark is relevant to this factor. However inculpatory, defendant's statement to Gurley is irrelevant to this factor.

The Court finds that defendant knowingly adopted a mark that was similar to plaintiff's mark. This factor weighs in favor of finding a likelihood of confusion.

Strength of the Mark

Because plaintiff has registered its mark, ENTREPRENEUR, and used it in commerce for over five years, plaintiff's mark is incontestable. *See* 15 U.S.C. § 1065 ("the right of the registrant to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable").

11

Defendant contends that plaintiff's mark is generic or descriptive and entitled to no protection. However, because plaintiff's mark is incontestable, defendant may not challenge it as "merely descriptive." *See Park 'N Fly, Inc., v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 196, 105 S. Ct. 658, 83 L. Ed. 2d 582 (1985).

Defendant also argues that plaintiff's mark is weak because the word "entrepreneur" is a common word in the English language that cannot be removed from general use by plaintiff's registration. He points to the Second Circuit's decision in *Gruner + Jahr USA Publishing, v. Meredith Corp.*, 991 F.2d 1072 (2nd Cir. 1993), in support of this contention. The *Gruner* court affirmed a trial court's determination that the "parents" portion of the plaintiff's mark was extremely weak because it was a common word in the language. *See id.* at 1078. The court analyzed the strength of the word without reference to what product or service it was used to identify. *See id.* Because the Ninth Circuit does not follow the same approach as the Second Circuit in determining the strength of the mark, *Gruner* is neither controlling nor persuasive authority on this Court.

For purposes of determining the likelihood of confusion in this Circuit, the strength of the mark is determined by its relationship to the products or services the mark identifies. *See Brookfield*, 174 F.3d 1036, ("Brookfield's trademark is not descriptive because is does not describe either the software product or its purpose."). Accordingly, the fact that plaintiff's mark is a common noun does not affect its strength. Plaintiff's registered mark is incontestable and is entitled to protection as a strong mark. This factor weighs in favor of finding a likelihood of confusion.

Marketing Channels

Plaintiff contends that parties' marketing channels overlap because both send their publications to media entities, target small business owners and use the Internet to market their services and provide information. Defendant contends that the only overlap between the parties' marketing channels is the use of the Internet because defendant does not sell his publication on newsstands or to subscribers.

There is no evidence as to how defendant markets his services to new clients or how plaintiff markets its products and services to new customers. The evidence before the Court demonstrates that both parties use the Internet as a marketing channel to promote their goods and services. This evidence, albeit nominal, demonstrates that the parties' marketing channels overlap, supporting a finding of a likelihood of confusion.

Degree of Consumer Care

"Likelihood of confusion is determined on the basis of a 'reasonably prudent consumer.' . . . What is expected of this reasonably prudent consumer depends on the circumstances." *Brookfield*, 174 F.3d at 1060 (citations omitted). Generally, when purchasing expensive items, the buyer is expected to be more discerning and less easily confused. *See id.* ; *see also Gallo*, 967 F.2d at 1293.

As noted above, plaintiff's consumers in this case are small business owners and others who read its publications, use the Internet, and purchase or participate in the educational resources provided by plaintiff. Defendant's consumers are small business owners who purchase his public relations services, potential clients, Internet users and the

13

media entities who receive his publication. Plaintiff argues that because defendant's publication is provided to media entities at no charge, consumers will exercise little care. Defendant argues that consumers are sophisticated media entities, business owners and advertisers who will exercise a great deal of care. The price of defendant's publication is not the only consideration relevant to this factor. The Court finds that small business owners seeking public relations services, advertisers and media entities will exercise a moderate degree of care. This factor weighs against finding a likelihood of confusion.

Likelihood of Expansion

Plaintiff contends that this factor weighs in favor of finding a likelihood of confusion because the parties' goods and services currently overlap. Defendant argues that because plaintiff does not plan to provide public relations services, there is no likelihood of expansion. Although there is no evidence that parties intend to expand their services to create additional overlap, it is clear that some overlap exists already. Accordingly, this factor weighs neither in favor nor against finding a likelihood of confusion.

Balancing

The Court finds that all but one factor weigh in favor of finding a likelihood of confusion in this case. Only the degree of consumer care weighs against finding a likelihood of confusion. Based on the above analysis, the Court concludes that defendant's mark is confusingly similar to plaintiff's mark. Plaintiff is entitled to summary adjudication of its claim for trademark infringement.

/ / /

## V. Unfair Competition under California Code § 17200

Plaintiff correctly contends that the same facts supporting the Court's conclusion that defendant has violated the Lanham Act are sufficient to demonstrate a violation of California Business & Professions Code § 17200. *See Summit Technology, Inc. v. High-Line Medical Instruments Co.*, 933 F. Supp 918 (C.D. Cal. 1996) (holding that facts supporting a party's claim for violation of § 1125(a) also support claims for unfair competition). Because the ultimate test under both is "whether the public is likely to be deceived or confused," the Court's conclusion that defendant's mark is confusingly similar to plaintiff's mark controls the resolution of the unfair competition claim. *See Cleary v. News Corporation*, 30 F. 3d 1255, 1262-63 (9th Cir. 1994) ("actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act"). Plaintiff is entitled to summary adjudication of its claim for unfair competition under California law.

## VI. Counterfeiting

Plaintiff alleges that defendant's unauthorized use of its SMALL BUSINESS SQUARE mark on defendant's website constitutes counterfeiting. In July 1997, plaintiff selected defendant's business to be featured on its SMALL BUSINESS SQUARE website and permitted defendant to place the SMALL BUSINESS SQUARE mark on his website. UF. 7. However, in January 1998, plaintiff notified defendant that he no longer had permission to use the mark on his website. Sometime during the pendency of this litigation, defendant removed the mark from his site.

Counterfeiting is a form of trademark infringement and requires plaintiff to demonstrate that: (1) defendant is using a counterfeit, copy or imitation of plaintiff's mark; (2) without plaintiff's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive. *See* 15 U.S.C. § 1114(1)(a). The test for infringement of § 1114 is the same as that for § 1125(a): likelihood of confusion. *See Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 873 (9th Cir. 1999).

Defendant contends that at the time he "was granted permission to use the logo, he was not made aware that Plaintiff had any policy regarding the use of this logo." Opp. at 23.[1] This statement may be true, but the evidence before the Court demonstrates that defendant was clearly informed that use after January 1998 was unauthorized. *See* Finkelstein Dec. Ex. I. There is sufficient evidence to demonstrate that defendant used plaintiff's mark without authorization.

However, plaintiff has not demonstrated that a likelihood of confusion exists. Plaintiff's cursory statement that by the time defendant removed the mark from his website "the damages has been done, as Smith had created the mistaken belief among consumers that his web site and services were associated with, or endorsed by, Entrepreneur" is insufficient to prevail on summary adjudication. *See* Points and Authorities at 21. Without citation to

---

[1] Defendant's single sentence statement that "under the holding of *Welles*, such use is clearly fair use" is insufficient to assert and demonstrate this affirmative defense. Opp at 23.

16

evidence or authority by plaintiff, the Court cannot conclude that the placement of plaintiff's mark on defendant's website constitutes counterfeiting in violation of § 1114.

Because plaintiff has not met its "initial burden of demonstrating the absence of a genuine issue of material fact" it is not entitled to summary adjudication of its claim for counterfeiting. *See Anderson*, 477 U.S. at 256.

## VII. Damages and Attorney Fees

Plaintiff's requests for an award of damages and attorney fees are denied. A determination of the amount of either damages or attorney fees is premature until each of plaintiff's claims for relief has been resolved by the Court.

## VIII. Conclusion

Plaintiff's motion for summary judgment, filed May 19, 2000, is granted in part and denied in part. Plaintiff is entitled to summary adjudication of its claims for trademark infringement and unfair competition. Plaintiff's motion is denied in all other respects. Defendant's motion for summary judgment, filed June 2, 2000, is denied.

IT IS SO ORDERED.

June 28, 2000

FLORENCE-MARIE COOPER, JUDGE
UNITED STATES DISTRICT COURT